**MANATT, PHELPS & PHILLIPS, LLP**
John M. LeBlanc (SBN 155842)
**E-mail:** JLeBlanc@manatt.com
Ileana M. Hernandez (SBN 198906)
**E-mail:** IHernandez@manatt.com
Luke L. Punnakanta (SBN 293488)
**E-mail:** LPunnakanta@manatt.com
11355 W. Olympic Blvd
Los Angeles, California 90064
Telephone: (310) 312-4228
Facsimile: (310) 914-5855

**WILLIAMS & CONNOLLY LLP**
Brendan V. Sullivan, Jr. (*Pro Hac Vice* application forthcoming)
William R. Murray, Jr. (*Pro Hac Vice* application forthcoming)
Steven M. Cady (*Pro Hac Vice* application forthcoming)
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
**E-mail:** scady@wc.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA MITCHELL, Individually as successor in interest to Chase Frei, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HEALTH NET, INC., HEALTH NET LIFE INSURANCE CO., HEALTH NET OF CALIFORNIA, INC., MANAGED HEALTH NETWORK, INC., and CENTENE CORP.,<br><br>　　　　　Defendants. | Case No. 2:18-cv-05499<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants Health Net, Inc., Health Net Life Insurance Co., Health Net of California, Inc., Managed Health Network, Inc., and Centene Corp. ("Defendants") give notice of the removal of the above-captioned matter to the United States District Court for the Central District of California. As grounds for removal, Defendants state as follows:

## I. NATURE OF THE REMOVED CASE

1. On May 22, 2018, Plaintiff filed the action captioned *Patricia Mitchell, individually as successor in interest to Chase Frei, and on behalf of others similarly situated v. Health Net, Inc., Health Net Life Insurance Co., Health Net of California, Inc., Managed Health Network, Inc., and Centene Corp.*, in the Superior Court of California, County of Los Angeles. The case was assigned Case Number BC706917.

2. All Defendants were served on May 23, 2018.

3. Plaintiff alleges that she is the successor in interest of her son, Chase Frei. Mr. Frei allegedly purchased an individual PPO policy from Defendants to be effective on January 1, 2016. Compl. ¶ 45.

4. Plaintiff alleges that Mr. Frei was unable to find appropriate in-network care for his substance use disorder, and accordingly he was forced to seek out-of-network care. *Id.* ¶¶ 50–51.

5. According to the Complaint, Health Net refused to pay the full amount it was obliged to pay for Mr. Frei's treatment. Plaintiff alleges that Health Net was contractually obligated to pay for 75% of the charges Mr. Frei was billed for his out-of-network treatment, but in fact Health Net paid only about 10% of those charges. Compl. ¶ 61. Plaintiff alleges that, for a three-month period ending August 18, 2016, these incurred but unpaid charges amounted to $116,850.00. Compl. ¶ 74.

6. Because Health Net allegedly underpaid for Behavioral Health and Substance Use Disorder (BH/SUD) services, Mr. Frei allegedly accrued significant

debts through the practice of "balance bill[ing]." *See* Compl. ¶ 53. Balance billing refers to the practice of medical providers billing patients directly for amounts that the patient's insurance does not pay.

7. Plaintiff further alleges that, as a result of Defendants' alleged underpayment practices, Mr. Frei was forced to switch facilities frequently, which impaired his recovery. Compl. ¶ 80. Mr. Frei died in May 2017. *Id.*

8. Based upon the above conduct, Plaintiff brings six causes of action:
   a. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, *see* Compl. ¶ 126–127;
   b. Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, *see* Compl. ¶ 142;
   c. Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, *see* Compl. ¶ 152;
   d. Breach of Contract, Compl. ¶ 169;
   e. Breach of the Implied Covenant of Good Faith and Fair Dealing, *id.* ¶ 166; and
   f. Declaratory Relief, *id.* ¶ 179.

9. Federal jurisdiction exists over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## II. THIS REMOVAL IS PROCEDURALLY PROPER

10. This notice of removal is timely under 28 U.S.C. § 1446(b)(1), as the date of filing is within 30 days of the date of service on all defendants, May 23, 2018.

11. Venue is proper in the Central District of California under 28 U.S.C. § 1441(a) because the district encompasses Los Angeles County.

12. All defendants consent to this removal.

13. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all of the pleadings filed in the State Court are attached hereto as Exhibit A.

14. A copy of the written notice required by 28 U.S.C. § 1446(d), attached hereto as Exhibit B, is being filed in the State Court and will be served on Plaintiff.

### III. FEDERAL JURISDICTION EXISTS UNDER CAFA

15. CAFA grants district courts original jurisdiction over class actions where there is minimal diversity, the putative class contains at least 100 members, and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5). For notice of removal purposes, the defendant need only make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

16. Plaintiff is a California citizen. Compl. ¶ 1. She brings suit as the successor in interest of Chase Frei, who was a California citizen at the time of his death. *See* Compl. ¶¶ 47, 51, 61; Decl. of Patricia Mitchell ¶ 2 & Ex. 1.

17. Defendant Centene Corporation is a Delaware corporation whose principal place of business is in Missouri. Compl. ¶ 6. Centene Corporation is therefore a citizen of Delaware and Missouri. 28 U.S.C. § 1332(c)(1).

18. The minimal diversity requirement is met, because Centene Corporation is not a citizen of the same state as Plaintiff or Plaintiff's decedent. *See* 28 U.S.C. § 1332(d)(2)(A).

19. Plaintiff defines the proposed class as "[a]ll California residents who purchased a Health Net PPO Policy on or after October 1, 2013, and prior to 2017." Compl. ¶ 112. Plaintiff alleges that the class contains "thousands of persons." Compl. ¶ 114. Therefore, the proposed class, if one is determined by this Court to exist, has more than 100 members.

20. Defendants deny that Plaintiff is entitled to any relief, but for amount-in-controversy purposes, the Court must assume that Plaintiff succeeds on her claims. *See Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute,

not a prospective assessment of defendant's liability.") Under this standard, Plaintiff's complaint meets the $5 million amount-in-controversy requirement.

21. Plaintiff alleges that Defendants used inapplicable reimbursement rates that allowed them to underpay for BH/SUD care, thus increasing the class's out of pocket expenses. Compl. ¶ 73. Through "balance bill[ing]," BH/SUD providers allegedly passed along to Plaintiff and the class the difference between the actual reimbursement and the reimbursement that Plaintiff alleges was required. *Id.* ¶¶ 53, 71. Thus, Plaintiff seeks to recover out-of-pocket expenses based upon these alleged underpayments. *See id.*, Prayer for Relief ¶ 4 (requesting "damages" for "failure to provide coverage under the contracts").

22. Plaintiff alleges that Defendants improperly reduced payments from 75% of billed charges to about 10% of billed charges, causing patients to accrue charges. Compl. ¶ 71. Plaintiff alleges that Mr. Frei accrued over $115,000 in charges over a three-month period in 2016. *Id.* ¶ 74. If even 50 other Health Net customers had similar alleged claims, the amount-in-controversy requirement would be met from this as well.

23. As an indication of what Plaintiff considers the magnitude of the alleged underpayments, Plaintiff alleges that Defendants had incurred a $390 million liability for unpaid BH/SUD claims in California by March 2016. Compl. ¶ 98.[1]

24. Plaintiff also alleges that class members have paid "inflated premiums" based upon the alleged under-coverage of BH/SUD care. *Id.* ¶ 128. Defendants deny that class members paid inflated premiums, but the premiums paid by the class over the period for which Plaintiff claims damages are many times larger than $5 million. *See Lewis*, 627 F.3d at 399 (holding that amount in

---

[1] While Defendants dispute that the $390 million reserve related entirely BH/SUD claims, the allegations in the Complaint control for amount-in-controversy purposes. *See Cain v. Hartford Life and Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("[A] court must assume that the allegations of the complaint are true.").

controversy over claims of allegedly unauthorized billing included all billed amounts; defendant did not need to make initial demonstration of which amounts were unauthorized).

25. Plaintiff further requests a declaration regarding the parties' respective rights concerning, among other things, the reimbursement rate at which Defendants will be obligated to pay future claims. Compl. ¶¶ 179–180. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (internal quotation marks omitted). Defendants deny that Plaintiff is entitled to a declaration establishing a different payment methodology than the one they now use—a methodology the State of California has approved. But if a declaration were granted increasing Defendants' reimbursement rate, as Plaintiff seeks, then Defendants would be forced to increase their out-of-network BH/SUD reimbursements by over $5 million going forward.

26. Finally, Plaintiff claims both punitive damages and attorneys' fees. *See, e.g.*, Compl. ¶¶ 138, 163 (attorneys' fees); 139 (punitive damages). Defendants deny that Plaintiff is entitled to punitive damages or attorneys' fees, but both are properly included in the amount in controversy. *See, e.g., Adkins v. J.B. Hunt Transport, Inc.*, 293 F. Supp. 3d 1140, 1147–48 (E.D. Cal. 2018). For amount-in-controversy purposes, courts commonly consider punitive damages at a one-to-one ratio to economic damages, *see Sloan v. 1st Am. Auto. Sales Training*, No. 2:16-cv-5341, 2017 WL 1395479, at *3 (C.D. Cal. Apr. 17, 2017), and assume attorneys' fees equal to 25% of economic damages, *see Heejin Lim v. Helio, LLC*, No. 11-cv-9183, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012).

27. For the above reasons, CAFA provides jurisdiction over this case.

## IV. CONCLUSION

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants hereby remove the above-captioned matter to the United States District Court for the Central

1 | District of California.

2 | Dated: June 20, 2018                MANATT, PHELPS & PHILLIPS, LLP

By: /s/ John M. LeBlanc
    John M. LeBlanc
    *Attorneys for Defendants*

320526273.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# CERTIFICATE OF SERVICE

I, Brigette Scoggins, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action.

My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064. On **June 20, 2018,** I served a copy of the following:

**NOTICE OF REMOVAL**

| | |
|---|---|
| Daniel J. Callahan<br>Edward Susolik<br>Richard T. Collins<br>Damon D. Eisenbrey<br>CALLAHAN & BLAINE, APLC<br>3 Hutton Centre Drive, 9th Floor<br>Santa Ana, CA 92707<br>Phone: (714) 241-4444<br>Fax:  (714) 241-4445 | *Attorneys For Plaintiff*<br>*Patricia Mitchell, individually as successor in interest to Chase Frei, and on behalf of all others similarly situated* |

☒    **(BY MAIL)** By placing such document(s) in a sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of correspondence for mailing with the United States Postal Service, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **June 20, 2018**, at Los Angeles, California.

*/s/ Brigette Scoggins*
Brigette Scoggins