# EXHIBIT A

COPY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 22 2018

Sherri R. Carter, Executive Officer/Clerk of Court

By: Brittny Smith, Deputy

1　**CALLAHAN & BLAINE, APLC**
　　Daniel J. Callahan (Bar No. 91490)
2　Edward Susolik (Bar No. 151081)
　　Richard T. Collins (Bar No. 166577)
3　Damon D. Eisenbrey (Bar No. 215927)
　　3 Hutton Centre Drive, Ninth Floor
4　Santa Ana, California 92707
　　Telephone: (714) 241-4444
5　Facsimile: (714) 241-4445

6　Attorneys for Plaintiff PATRICIA MITCHELL,
　　individually as successor in interest to Chase Frei,
7　and on behalf of all others similarly situated

8　　　　　　SUPERIOR COURT OF CALIFORNIA

9　　　　　　　COUNTY OF LOS ANGELES

10

11　PATRICIA MITCHELL, individually as　　CASE NO. **BC 7 0 6 9 1 7**
　　successor in interest to Chase Frei,
12　and on behalf of all others similarly situated,

13　　　　　　　　Plaintiff,　　　　　　**COMPLAINT**

14　　　　v.

15　HEALTH NET, INC., a Delaware
　　corporation;
16　HEALTH NET LIFE INSURANCE
　　COMPANY, a California corporation;
17　HEALTH NET OF CALIFORNIA, INC., a　　Complaint Filed:
　　California corporation;　　　　　　　Trial Date:
18　MANAGED HEALTH NETWORK, INC., a
　　Delaware corporation;
19　CENTENE CORPORATION, a Delaware
　　corporation; and DOES 1 through 100,
20　inclusive,

21　　　　　　　　Defendants.　　　　　　BY FAX

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

1    Plaintiff PATRICIA MITCHELL, individually as successor in interest to Chase Frei,

2  and on behalf of all others similarly situated, brings this action against Defendants HEALTH

3  NET, INC., a Delaware corporation; HEALTH NET LIFE INSURANCE COMPANY, a

4  California corporation; HEALTH NET OF CALIFORNIA, INC., a California corporation;

5  MANAGED HEALTH NETWORK, INC., a Delaware corporation; CENTENE

6  CORPORATION, a Delaware corporation (collectively "Health Net"), and hereby alleges the

7  following on information and belief, except as to those allegations that pertain to Ms. Mitchell,

8  which are alleged on personal knowledge:

9                       **THE PARTIES**

10    1.     Plaintiff is a citizen of the State of California and resides in San Joaquin County.

11  During the relevant times alleged in this Complaint, Plaintiff resided in Alameda County.

12    2.     Plaintiff is the mother of Chase Frei, born on September 1, 1994, who passed away

13  on May 6, 2017 (the "Decedent"). The Decedent died intestate and no assets of the Decedent

14  required probate. Plaintiff's declaration and a certified copy of Decedent's death certificate are

15  attached hereto as Exhibit A.

16    3.     No proceeding is now pending in California for the administration of Decedent's

17  estate.

18    4.     Plaintiff is Decedent's successor in interest as defined by Code of Civil Procedure

19  section 377.11, and as provided by Insurance Code section 10130 and Probate Code section 6402,

20  and succeeds to Decedent's interests in this action.

21    5.     No person other than Plaintiff has a superior right to commence this action or to be

22  substituted for Decedent in this action.

23    6.     Defendant Health Net, Inc. ("HNI") is, and was at all times relevant to this action, a

24  corporation duly organized and existing under the laws of the State of Delaware, with its principal

25  place of business located in Woodland Hills, California. HNI is authorized to conduct business as

26  a health care service plan and health care insurer, and transacts, and is transacting, the business of

27  providing health plans to consumers throughout California.

28    7.     Defendant Health Net Life Insurance Company ("HNLIC") is, and was at all times

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -

1  relevant to this action, a corporation duly organized and existing under the laws of the State of

2  California, with its principal place of business located in Woodland Hills, California. HNLIC is

3  authorized to conduct business as a health care service plan and health care insurer, and transacts,

4  and is transacting, the business of providing health plans to consumers throughout California.

5         8.     Defendant Health Net of California, Inc. ("HNCI") is, and was at all times relevant

6  to this action, a corporation duly organized and existing under the laws of the State of California,

7  with its principal place of business located in Woodland Hills, California. HNCI is authorized to

8  conduct business as a health care service plan and health care insurer, and transacts, and is

9  transacting, the business of providing health plans to consumers throughout California.

10         9.     Defendant Managed Health Network, Inc. ("MHNI") is, and was at all times

11  relevant to this action, a corporation duly organized and existing under the laws of the State of

12  Delaware, with its principal place of business located in Woodland Hills, California. MHNI is

13  authorized to conduct business as a health care service plan and health care insurer, and transacts,

14  and is transacting, the business of providing health plans to consumers throughout California.

15        10.    Defendant Centene Corporation ("Centene") is, and was at all times relevant to this

16  action, a corporation duly organized and existing under the laws of the State of Delaware, with its

17  principal place of business located in St. Louis, Missouri. Centene is authorized to conduct

18  business as a health care service plan and health care insurer, and transacts, and is transacting, the

19  business of providing health plans to consumers throughout California.

20        11.    Centene acquired HNI, HNCI, HNLIC, and MHNI through merger in 2015, which

21  was approved by the California Department of Managed Health Care ("DMHC") and the

22  California Department of Insurance ("CDI") in 2016, and is now the parent company or successor

23  in interest of, and thereby liable for the acts and omissions of HNI, HNCI, HNLIC, and MHNI.

24        12.    Plaintiff does not know the true names and capacities of defendants sued as DOES

25  1 through 100, inclusive, and therefore sue such defendants with such fictitious names. Plaintiff

26  will amend this complaint, if necessary, to allege their true names and capacities when they have

27  been ascertained. Plaintiff is informed and believes that each of the named and fictitiously named

28  defendants are in some way involved in and responsible for the events, transactions, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   occurrences alleged in the complaint, as well as the damages caused to Plaintiff.  DOES 1 through

2   100 are included in the references throughout this complaint to HNI, HNCI, HNLIC, MHNI, and

3   Centene, as appropriate.

4        13.    Each of the defendants is, and was at all times relevant to this action, the agent,

5   servant, representative, or alter ego of each of the other defendants, and in doing the things

6   hereinafter alleged, each of the defendants was acting in the scope of its authority as such agent,

7   servant, representative, or alter ego, and with the permission and consent of each of the other

8   defendants.

9        14.    Each of the defendants formed and operated a conspiracy with each of the other

10  defendants to perform the acts alleged herein, in furtherance of a common design and with

11  knowledge that the conduct alleged herein of each of the defendants constituted breaches of duty

12  and provided substantial assistance or encouragement to each other to so act.

13       15.    Defendants HNI, HNCI, HNLIC, MHNI, Centene and DOES 1 through 100,

14  inclusive, and each of them, are collectively referred to herein as "Health Net," unless referred to

15  in their individual capacities.

16                           **JURISDICTION AND VENUE**

17       16.    This Court has jurisdiction over this action under Article VI, section 10 of the

18  California Constitution and section 410.10 of the Code of Civil Procedure.  Jurisdiction is also

19  proper under California Business and Professions Code section 17200, et seq. and California Civil

20  Code section 1750, et seq.

21       17.    This Court has jurisdiction over Health Net, as a resident of the State of California,

22  and because Health Net has purposely availed itself of the privilege of conducting business

23  activities in California and currently maintains systematic and continuous business contacts with

24  this State, with thousands of enrollees who are residents of this State and who do business with

25  Health Net.

26       18.    Venue is proper in this Court because, among other things, Health Net's principle

27  place of business is in the County of Los Angeles, and because Health Net engages and performs

28  business activities in the County of Los Angeles, and has received substantial profits from

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  consumers who reside in the County of Los Angeles.

2  **STATUTORY MANDATES**

3    19.    Enacted in March 2010, the Patient Protection and Affordable Care Act ("ACA")

4  created new rules applicable to health plans in the United States (PL 111-148, March 23, 2010,

5  124 Stat 119).  Under the ACA, states may operate a marketplace, known as an exchange, through

6  which private health plans are sold to consumers (42 U.S.C. § 18031(b)).

7    20.    Individuals could purchase health plans through their state's exchange during the

8  initial six-month 2014 Open Enrollment Period, between October 1, 2013 and March 31, 2014 (45

9  C.F.R. § 155.410).  Individuals could also purchase health plans directly from health plans during

10  the 2014 Open Enrollment Period.  After the 2014 Open Enrollment Period, individuals could not

11  purchase health plans until the next enrollment period, beginning November 15, 2014 (45 C.F.R §

12  155.410(e)).

13    21.    The ACA expressly preserves state laws that offer additional consumer protections

14  that do not "prevent the application" of any ACA requirement (42 U.S.C. § 18041(d)).  State laws

15  that impose stricter requirements on health plan issuers than those imposed by the ACA are also

16  not superseded by the ACA.

17    22.    To further the goals of ensuring that consumers are educated and informed about

18  the coverage and benefits and enabling consumer choice in the market place, regulations

19  promulgated pursuant to the Insurance Code require that advertisements for health plans "shall be

20  truthful and not misleading in fact or in implication."  Cal. Code Regs. Title 10 ["10 CCR"] §

21  2536.1(b).

22    23.    Insurance Code sections 10603 and 10604 require health plans to "provide, in

23  easily understood language and in a uniform, clearly organized manner" information including the

24  "principal benefits and coverage of the disability insurance policy" and the "exceptions,

25  reductions, and limitations that apply to such policy."

26    24.    Insurance Code section 10133.5 requires "that insureds have opportunity to access

27  needed health care services in a timely manner" … "to assure accessibility of provider services in

28  a timely manner to individuals … pursuant to benefits covered under the policy or contract."  Id. at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -
COMPLAINT

1   subds. (a) and (b). The purpose of the statute is to ensure, among other things, that:

2        a.    "The policy or contract is not inconsistent with standards of good health

3   care and clinically appropriate care." Ins. Code § 10133.5(b)(3).

4        b.    "All contracts including contracts with providers, and other persons

5   furnishing services, or facilities shall be fair and reasonable." Ins. Code § 10133.5(b)(4).

6       25.    Regulations promulgated pursuant to Insurance Code section 10133.5 require that

7   "insurers shall ensure that … [n]etwork providers are duly licensed or accredited and that they are

8   sufficient, in number or size, to be capable of furnishing the health care services covered by the

9   insurance contract, taking into account the number of covered persons, their characteristics and

10   medical needs including the frequency of accessing needed medical care within the prescribed

11   geographic distances outlined herein and the projected demand for services by type of services."

12   10 CCR § 2240.1(b)(1).

13       26.    Insurance Code section 10133.56 similarly allows consumers who are in the course

14   of treatment to continue to receive treatment from their provider of choice, even after the health

15   insurer terminates its contract with the provider.

16   **NATURE OF THE ACTION**

17       27.    Plaintiff brings this action to challenge Health Net's deceptive and fraudulent

18   misrepresentations, its inadequate network of contracted providers of behavioral health and

19   substance use disorder services ("BH/SUD"), its grossly mishandled administration of PPO

20   Policies, its groundless investigation of BH/SUD claims and consequent elimination of out-of-

21   network choices, and its inequitable payment of benefits for BH/SUD services as compared to

22   medical and surgical services.

23       28.    In violation of California law, Health Net:

24        a.    Has misrepresented and continues to misrepresent to consumers that certain

25   BH/SUD providers are participating in Health Net's network of contracted providers, or in-

26   network providers, when in fact they are not;

27        b.    Has made and continues to make false and misleading representations and

28   omissions in advertising, marketing, and communications regarding BH/SUD provider networks

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   and as to other matters as more fully described herein;

2            c.      Has subjected and continues to subject Plaintiff and others similarly situated

3   to inadequate networks of BH/SUD providers, causing delays and interruptions in accessing

4   needed health care;

5            d.      Has subjected and continues to subject Plaintiff and others similarly situated

6   to exceedingly long wait times, regularly lasting several hours and in some cases, like Plaintiff',

7   days and weeks on customer service telephone lines when calling to address these problems,

8   misinformation through Health Net's website, and countless hours corresponding with Health Net

9   and correcting misrepresentations made by Health Net;

10           e.      Has subjected and continues to subject Plaintiff and others similarly situated

11  to unreasonably limited, almost non-existent, choices of out-of-network BH/SUD providers as a

12  direct result of Health Net's groundless, industry-wide dragnet SIU investigation of out-of-

13  network BH/SUD providers; and

14           f.      Has subjected and continues to subject Plaintiff and others similarly situated

15  to exorbitant increased costs of health care as a direct result of Health Net's practice of

16  reimbursing BH/SUD services at Medicare allowable rates that do not apply to the BH/SUD

17  services provided, resulting in an underpayment on average of approximately 70-80% of the

18  providers' billed charges and a resulting increase in Plaintiff's out of pocket expenses for covered

19  health care services.

20       29.     In late 2013, to coincide with the commencement of the ACA, Health Net canceled

21  its existing non-ACA-compliant PPO Policies and made available to California consumers new

22  PPO Policies, effective January 1, 2014.

23       30.     The new ACA-compliant PPO Policies were first made available to consumers

24  during a designated enrollment period between October 1, 2013 and March 31, 2014 (the "2014

25  Open Enrollment Period"). Except for a few narrow exceptions, consumers may only enroll in

26  new coverage or switch coverage during designated open enrollment periods.

27       31.     Health Net represented and marketed to consumers that its health plans have

28  specific BH/SUD providers under contract and within its network of providers available to those

- 7 -

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   consumers enrolled in the Health Net PPO Policies.

2       32.     After Plaintiff and those similarly situated enrolled in the new Health Net PPO

3   Policies, they discovered that their provider networks did not include the BH/SUD providers

4   Health Net had represented to be in-network providers, and that those provider networks were

5   much more limited than previously represented by Health Net.  Due to Health Net's deceptive and

6   fraudulent actions and misrepresentations, Plaintiff and those similarly situated are not able to

7   fully access the benefits of the plans they purchased.

8       33.     Plaintiff and those similarly situated did not become fully aware of the reduced

9   provider networks until after the close of their respective open enrollment periods, thereby locking

10  them in those plans until the next open enrollment period.  Some consumers have not yet become

11  aware of the reduced provider networks.

12      34.     Health Net had a clear incentive to conceal its networks:  As a result of these

13  practices, Health Net significantly increased its share of the California health plan market, while

14  offering inferior products and not paying the contractually and statutorily mandated benefits.

15      35.     Health Net's practices improperly shift the increased cost of health care onto

16  Plaintiff and those similarly situated in the form of exorbitant unpaid bills and the transformation

17  of fixed co-payments into percentage-based co-insurance obligations if they cannot access in-

18  network providers in a timely manner from the limited number of in-network providers in Health

19  Net's provider network.

20      36.     By selling health plans that do not provide benefits or access to BH/SUD in-

21  network providers as advertised, Health Net's deceptive business practices resulted in mass

22  confusion, with Plaintiff and others similarly situated trapped in a labyrinth of automated phone

23  trees, multiple transfers, oppressive hold times, disconnections, useless Health Net website

24  searches and "Custom Provider Listings," pointless correspondence, and restarting the entire

25  process.

26      37.     Health Net's deceptive and fraudulent practices went beyond providing an

27  inadequate network of BH/SUD providers.  In January 2016, Health Net instituted an industry-

28  wide dragnet SIU investigation of out-of-network providers of BH/SUD services.  The SIU

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 8 -

COMPLAINT

1  investigation was intended to avoid the payment of out-of-network provider BH/SUD services,

2  and Health Net has in large part avoided such contractually and statutorily mandated payments.

3  As a direct consequence, Plaintiff and others similarly situated found themselves unable to find

4  BH/SUD out-of-network providers willing to treat Health Net insureds.

5        38.    For those of Health Net's insureds, such as Plaintiff and others similarly situated,

6  who were able to find out-of-network BH/SUD providers willing to provide treatment, Health Net

7  further compounded the injury and damages by employing a deceptive and fraudulent practice of

8  reimbursing out-of-network BH/SUD services at Medicare reimbursement rates that do not apply

9  to the BH/SUD services provided, resulting in average underpayments of approximately 70-80%

10  of the out-of-network providers' billed charges, and a resulting increase in Plaintiff's out of pocket

11  expenses for covered health care services.

12        39.    The inapplicable Medicare reimbursement rates applied by Health Net were only

13  misapplied to BH/SUD treatment services, not medical and surgical services, and therefore violate

14  the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), made applicable to

15  health insurance companies in the State of California pursuant to California Insurance Code section

16  10112.27.

17        40.    Plaintiff brings this action individually as successor in interest to Chase Frei,

18  and on behalf of a class of current California residents who are enrolled in, or who were enrolled

19  in, a Health Net PPO health insurance contract, purchased on or after October 1, 2013

20  (collectively, the "Class," or individually, "Class Members").

21        41.    Health Net's deceptive and fraudulent practices of representing and advertising that

22  its health plans have certain providers in the plans' networks when those providers are not actually

23  in the plans' networks violates California Insurance Code provisions, as well as the Unfair

24  Competition Law ("UPL"), California Business and Professions Code sections 17200, et seq., and

25  the Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750, et seq.

26        42.    Through its conduct as described herein, Health Net has breached the individual

27  PPO contracts entered into with Plaintiff and the Class Members and breached the implied

28  covenant of good faith and fair dealing in each of those PPO contracts.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   43.   Plaintiff seeks to recover damages resulting from Health Net's breach of contract

2   and breach of the implied covenant of good faith and fair dealing; an order of this Court enjoining

3   Health Net's continued violations; an order for restitution of all monies paid for Health Net PPO

4   Policies in an amount reflecting the difference in the value of the PPO Policies with the providers

5   as misrepresented at any time since October 1, 2013, and the value of the PPO Policies with the

6   actual reduced provider networks, and other remedies as set forth herein.

7                                    **FACTUAL ALLEGATIONS**

8   44.   During open enrollment 2016, the Decedent enrolled in a Health Net individual and

9   family PPO insurance policy.

10   45.   Health Net issued to the Decedent, through the Covered California Exchange, its

11   individual Family Health Net Platinum PPO Policy No. 497151, effective January 1, 2016,

12   through the Decedent's death (the "Policy"), though Health Net admittedly issued in error Policy

13   No. 506138, effective April 1, 2016, but confirmed Policy No. 497151 was the only Policy in

14   effect for 2016.

15   46.   The Decedent, like many his age, became addicted to prescribed opioid pills while

16   in high school. The Decedent's addiction continued after he graduated high school in 2013, and

17   eventually the Decedent's addiction intensified and he began using illicit drugs.

18   47.   In 2015, the Decedent acknowledged his addiction and became willing to take the

19   steps necessary to get sober. He moved from his residence in Alameda County, where the familiar

20   faces and surroundings were not conducive to his recovery, and moved to Orange County.

21   48.   The Decedent entered his recovery willingly and was committed to getting sober.

22   However, Health Net impeded the Decedent's recovery at every step by not maintaining an

23   adequate network of BH/SUD providers and effectively precluding access to out-of-network

24   BH/SUD providers.

25   49.   Initially, Plaintiff and the Decedent paid cash for the behavioral health and

26   substance use disorder services ("BH/SUD") services.

27   50.   After obtaining the Policy, the Decedent sought out treatment with an in-network

28   provider. Health Net's directory of BH/SUD providers did not include a single residential

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -

1   treatment facility able to treat the Decedent.  The in-network providers either did not provide

2   residential treatment or did not provide substance use disorder treatment, only eating disorders and

3   other behavioral health disorders.  The Decedent was forced to seek treatment with an out-of-

4   network provider pursuant to the terms of his Policy.

5        51.     The Decedent participated in outpatient BH/SUD treatment with an out-of-network

6   provider in Orange County.  The provider submitted claims to Health Net, which were paid

7   pursuant to the terms of the Policy at 75% of the provider's billed charges.  This continued

8   through January 13, 2016.

9        52.     For the Decedent's treatment beginning on January 14, 2016, Health Net refused to

10  reimburse the Decedent's out-of-network provider, explaining that the claims were being

11  contested because of insufficient information.  Health Net requested that the Decedent provide

12  evidence of payment of his deductible, co-insurance and co-payment, compliant medical records,

13  and a copy of the provider's licenses and certificates.

14       53.     Health Net continued to deny claims for Decedent's dates of service through

15  February 12, 2016, leaving Plaintiff with a significant balance bill from his provider and a debt

16  subject to collection and credit reporting.

17       54.     Health Net subsequently re-processed some of the claims for the dates of service in

18  January and February, 2016, reimbursing the Decedent's provider at approximately 10% of the

19  billed charges, based upon a purported Medicare conversion rate, instead of 75% as required by

20  the Policy.  Those inadequate payments were not made until much later.  In fact, the last

21  explanation of benefits ("EOB") from Health Net indicates the claim was re-processed on July 5,

22  2017, *more than a year after services were rendered and two months after the Decedent passed*

23  *away.*

24       55.     Because Health Net refused to pay the Decedent's out-of-network provider, the

25  Decedent was forced to find another provider of BH/SUD services.  Once again, the Decedent and

26  Plaintiff were unable to identify a single in-network provider listed in the Health Net directory of

27  providers.  Through the Health Net website, Plaintiff requested a listing of BH/SUD providers.

28  Health Net generated a "Custom Provider Listing" on February 29, 2016.  Once again, however,

- 11 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    none of the providers were able to provide treatment for the Decedent because they either did not

2    provide residential treatment or did not provide substance use disorder treatment, only eating

3    disorders and other behavioral health disorders.

4         56.     In March 2016, the Decedent began treatment again with an out-of-network

5    provider. Once again, Health Net denied the claim for the same reason – insufficient information

6    – and including the same request for documentation that the Decedent had no ability to provide

7    (e.g. the provider's license and certificates).

8         57.     Plaintiff again accessed the Health Net website and requested a listing of BH/SUD

9    providers. Health Net again provided a Custom Provider Listing on April 13, 2016. Again, none

10   of the providers were able to treat the Decedent.

11        58.     The Decedent again began treatment with another out-of-network BH/SUD

12   provider. This time, Health Net honored the claims and reimbursed the provider at 60% of the

13   billed charges, despite the fact that the policy provides for reimbursement at 75% of the billed

14   charges. Health Net explained that the out-of-network provider's charges were being reimbursed

15   based upon a "negotiated agreement with Multiplan/Viant." This method of reimbursement

16   continued for dates of service through May 18, 2016.

17        59.     Multiplan, Inc. is a New York corporation and a provider of healthcare cost

18   management solutions that contracted with Health Net to negotiate contracts with out-of-network

19   providers of BH/SUD services. Health Net, as an undisclosed principal in the contracts between

20   Multiplan and the providers, agreed to pay a lesser reimbursement rate for covered services than

21   owed under the Policy, in exchange for a promise to expedite payment to the providers.

22        60.     After completing his residential treatment, the Decedent sought out a provider of

23   outpatient BH/SUD services. Once again, there were no in-network providers able to treat the

24   Decedent and he, therefore, sought treatment with an out-of-network provider.

25        61.     The Decedent, having successfully completed a 30-day residential treatment, was

26   committed to his sobriety and recovery. He aggressively pursued a 90-day outpatient course of

27   treatment with an out-of-network provider in Orange County. Health Net would only reimburse

28   the provider at approximately 10% of the billed charges, not 75%, based upon a purported

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Medicare rate, resulting in a significant debt for the Decedent and Plaintiff.

2        62.    On March 30, 2016, Elizabeth Fairchild, Regulatory Affairs Analyst for Health

3   Net, tried to explain why Health Net had wrongfully denied the Decedent's claims for BH/SUD

4   treatment received through out-of-network providers. Ms. Fairchild stated that the Policy requires

5   the insured to satisfy certain financial responsibilities, "such as the payment of any deductible, co-

6   payment and co-insurance." She stated that "these obligations are mandatory, and should not be

7   waived or forgiven by the provider," and that Health Net had requested that the providers supply

8   proof that they collected the appropriate amount. Contrary to Ms. Fairchild's statement, this is not

9   a legitimate basis, under the Policy, to deny payment. Furthermore, the Decedent's Policy did not

10  call for a deductible; co-payments are only paid for in-network treatment; and any co-insurance

11  calculation cannot be done until Health Net states what amount of the billed charges it is going to

12  pay, since co-insurance is based upon a percentage of the allowable amount.

13       63.    After Plaintiff provided Health Net with proof of cash payments to an out-of-

14  network provider, in the amount of $3,000.00, Ms. Fairchild on behalf of Health Net refused to

15  apply those payments to the Decedent's out-of-pocket maximum until it was able to confirm that

16  the payments Plaintiff demonstrated had been made were actually received by the provider. Ms.

17  Fairchild stated to Plaintiff that Health Net had not received any claims from the provider in order

18  to verify the payments. However, the provider by that time had already submitted four claims that

19  were ignored by Health Net.

20       64.    With respect to the Decedent and Plaintiff's complaints that Health Net's network

21  of providers did not include BH/SUD providers able to treat the Decedent, Jasmit B., Appeals and

22  Grievances Case Coordinator for Health Net, wrote to Plaintiff on April 13, 2016, that Health Net

23  had directed the concerns to its Medical Management Department "so that [Health Net] may

24  provide . . . a complete response." Health Net also indicated that a care manager would be

25  assigned to coordinate the Decedent's care.

26       65.    On May 3, 2016, Miriam T., Appeals and Grievances Case Coordinator for Health

27  Net, wrote to the Decedent in an effort to further explain why Health Net had not paid his provider

28  or properly credited the $3,000.00 in cash payments toward his out-of-pocket maximum. Health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

1  Net explained that the matter was being handled by its "Special Claims Department," who advised

2  that the claims from the Decedent's provider were "currently being reviewed." Until that review

3  was completed, Health Net would not agree to pay the provider or credit the $3,000.00 toward the

4  out-of-pocket maximum.

5      66.    Ms. Fairchild on behalf of Health Net again stated on May 25, 2016, that Health

6  Net had not received any claims from the Decedent's provider, though she did acknowledge that

7  the provider had stated that the claims were submitted electronically on April 27, 2016.

8      67.    On June 13, 2016, Ms. Fairchild on behalf of Health Net advised the Decedent that

9  his provider with whom he treated in January and February 2016 had finally been released from

10  Health Net's investigation and that the provider's claims would be paid.

11      68.    Beginning in January 2016, the Decedent and Plaintiff had been requesting of

12  Health Net that a care manager be assigned to the Decedent's care. After months of being

13  ignored, Ms. Fairchild on behalf of Health Net stated in a letter, dated May 25, 2016, that Sheila

14  Armstead had been assigned as a care manager.

15      69.    When Plaintiff spoke to Ms. Armstead of Health Net, Ms. Armstead stated that she

16  was not a care manager and that she worked in a department that did not have care managers.

17  Then Plaintiff received conflicting information from Health Net. One person told her that a care

18  manager is only assigned for out-patient treatment. Ms. Armstead told her that care managers are

19  only assigned for in-patient treatment. Since the Decedent was still receiving in-patient treatment,

20  he should have been assigned a care manager.

21      70.    On June 22, 2016, Ms. Fairchild on behalf of Health Net finally acknowledged

22  receipt of claims from the Decedent's provider for dates of service in March 2016. However, Ms.

23  Fairchild indicated that those claims were still being reviewed (three months later). Ms. Fairchild

24  also acknowledged in her letter that, despite its denials, Health Net had authorized the Decedent's

25  treatment with his out-of-network provider for dates of service in May and April 2016, and that

26  the claims were still under review.

27      71.    On July 27, 2016, Ms. Fairchild on behalf of Health Net attempted to explain to

28  Plaintiff why the Decedent's out-of-network providers were not being reimbursed at 75% of their

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

1    billed charges, but instead at a rate of 190% of a Medicare allowable rate, or approximately 10%

2    of the billed charges.  Ms. Fairchild stated that the Medicare rate applied to residential treatment

3    facilities, outpatient programs and clinical laboratories.  This reimbursement methodology left the

4    Decedent and Plaintiff, with a significant debt for the provider's balance bill, which Health Net

5    stated was the Decedent's obligation despite exhausting his out-of-pocket maximum.

6        72.    Ms. Fairchild on behalf of Health Net explained to Plaintiff, on September 9, 2016,

7    that Health Net had "completed their review of all of the claims for [the Decedent]."  Health Net

8    determined that some claims were paid correctly, "but the disallow code was [incorrect]."  Health

9    Net also determined that "there were some claims that were actually overpaid," but Health Net

10   *graciously* decided not to ask for the money back.  Ultimately, Ms. Fairchild stated that Health

11   Net's "review is now concluded," despite the Decedent and Plaintiff having a significant debt

12   owed to the out-of-network providers who either were not paid or were paid incorrectly at a

13   Medicare rate.

14       73.    Plaintiff had a telephone conversation with Ms. Fairchild of Health Net on

15   September 20, 2016, during which she questioned the processing of two separate claims for

16   treatment provided by the Decedent's out-of-network provider for dates of service in June and

17   August 2016.  Despite the provider billing two different services, with two different service codes,

18   and two different billed charges, Health Net paid the same Medicare rate.  Ms. Fairchild on behalf

19   of Health Net claimed, on September 29, 2016, that despite the different service codes, all of the

20   out-patient services are processed and paid based upon the Medicare rate, which turns out to be

21   approximately 10% of the provider's billed charge.

22       74.    On October 4, 2016, Lauren J., Case Coordinator for Health Net's Appeals and

23   Grievances, sent a letter to the Decedent in an attempt to explain why the Decedent's provider for

24   dates of services between May 18, 2016 and August 18, 2016, still had not been paid for

25   $116,850.00 in charges.  Health Net explained that its "research has been delayed because [Health

26   Net] could not obtain complete information necessary for [its] review."  Health Net further stated,

27   without explanation, that it was delaying payment pending a response from its claims department

28   regarding claims submitted by the Decedent's provider *"due to the fact that the services rendered*

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

1  *were related to mental health benefits.*"

2      75.      Lauren J., Case Coordinator of Appeals and Grievances for Health Net, wrote to

3  the Decedent on October 18, 2016, stating that the claims department had responded to its inquiry

4  concerning the outstanding billed charges of $116,850.00, and determined that the claims had been

5  processed correctly, even though the provider received approximately 10% of its billed charges,

6  instead of the 75% mandated by the policy.

7      76.      On October 18, 2016, Ms. Fairchild on behalf of Health Net wrote to Plaintiff to

8  address a number of questions.  First, she disputed Plaintiff's statement that Ms. Armstead, who

9  Ms. Fairchild confirmed was assigned to the Decedent as a care manager, directed the Decedent to

10  his out-of-network provider for the dates of service between May and August 2016.  Second, she

11  explained that the provider's claims were processed correctly, though a disallow code had been

12  incorrectly used, and that all of the claims for the dates of service between May and August 2016

13  had been processed.  Third, she explained the reason for the same reimbursement amount being

14  paid by Health Net, despite different services being rendered, as being the product of Health Net

15  employing a Medicare rate reimbursement methodology.  Fourth, she explained why Health Net

16  had been paying the Decedent's providers at 75% of their billed charges prior to February 2016,

17  but now at a Medicare rate of approximately 10% of the billed charges.  Ms. Fairchild explained

18  that Health Net had incorrectly overpaid those claims and that those prior claims also should have

19  been paid at a Medicare rate.

20      77.      On October 26, 2016, Ms. Fairchild on behalf of Health Net explained why

21  Plaintiff had received three different policies.  She confirmed that the Decedent had coverage for

22  2016 under one Health Net PPO policy, not two different policies, as indicated in a prior letter by

23  Ms. Fairchild that she acknowledged was incorrect, and that the initial policy was for the period of

24  November 2015 through the end of that year.

25      78.      After multiple requests by Plaintiff that Health Net re-process the claims for

26  Decedent's care and pay the claims at 75% of the billed charges, Ms. Fairchild on behalf of Health

27  Net wrote to Plaintiff on November 30, 2016, and explained that the Decedent's 140 claims for

28  services rendered by providers had been reviewed and Health Net determined that all of the claims

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  had been processed correctly, with the exception of claims for dates of service in January and

2  February, 2016, which Health Net contends were overpaid at 75% of the billed charges. Ms.

3  Fairchild concluded that Health Net would not be re-processing the claims.

4       79.    Health Net had drawn its line in the sand. It refused to reimburse out-of-network

5  BH/SUD providers at the appropriate rate of 75% of billed charges and, instead, insisted upon

6  using the inapplicable Medicare-rate methodology. Word was out in the industry and out-of-

7  network BH/SUD providers refused to treat Health Net insureds.

8       80.    As a result of Health Net's wrongful conduct, the Decedent was forced from one

9  facility to another, precluded from establishing any continuity of care and building a strong

10  enough foundation upon which to build his recovery, and ultimately succumbed to his disease on

11  May 6, 2017.

12  **HEALTH NET'S WRONGFUL CONDUCT**

13       81.    Health Net's website has at all relevant times offered a feature that allows potential

14  enrollees to search Health Net's provider networks, and Health Net also allows enrollees to obtain

15  provider network information over the phone. In addition, Health Net included representations

16  concerning its provider networks in its marketing, sales, and plan informational materials.

17       82.    In an effort to increase its share of the California health plan market, Health Net

18  engaged in a fraudulent and deceptive marketing scheme leading up to and during the 2014 Open

19  Enrollment Period and thereafter, by misrepresenting its provider networks during the open

20  enrollment periods in order to increase sales of its health plans and concealing that its networks

21  were significantly more limited than its networks prior to the 2014 Open Enrollment Period.

22       83.    Health Net has and maintains an inadequate network of BH/SUD treatment

23  providers while our nation is gripping with a raging epidemic of substance use disorders.

24       84.    Drug overdoses have become the leading cause of death of Americans under age

25  50, with two-thirds of those deaths from opioids.

26       85.    From 1999 to 2015, 568,699 persons died from drug overdoses in the United

27  States.

28       86.    Drug overdose deaths in the United States increased 11.4%, from 2014 to 2015,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

1  resulting in 52,404 deaths in 2015, including 33,091 (63.1%) that involved an opioid.

2      87.   In 2016, there were 63,632 drug overdose deaths in the United States.  Opioids

3  accounted for 66.4% (42,249) of the deaths, with increases across age groups, racial/ethnic groups,

4  urbanization levels, and multiple states.

5      88.   On average, 115 Americans die every day from an opioid overdose.  Drug

6  overdoses now cause more deaths than either car accidents or guns.

7      89.   The opioid crisis has destroyed lives and devastated families. It is the deadliest

8  drug crisis in United States history and it is only getting worse.  In 2016 alone, California lost

9  1,925 lives to the opioid epidemic.

10     90.   In light of this epidemic, between 2014 and 2016, hundreds of out-of-network

11  BH/SUD providers treated thousands of patients who had PPO policies provided by Health Net,

12  after verification of benefits by, and prior authorization from, Health Net.

13     91.   The Health Net PPO policies covering these patients, like Chase, required

14  reimbursement at 75% of the covered charge billed by the provider.  Up until January 2016,

15  Health Net had reimbursed out-of-network BH/SUD providers at 75% of their billed charges.

16  That stopped, and in fact, all payments stopped for out-of-network BH/SUD services when Health

17  Net instituted its groundless dragnet SIU investigation.

18     92.   Health Net wrote the language in its PPO Policy that requires reimbursement at

19  75% of billed charges because it wanted to increase its membership and premium dollars after

20  implementation of the ACA, but when it came time to pay claims under those PPO policies,

21  Health Net refused to honor its obligations because Health Net wanted to show a greater net value

22  increase its sales price for an anticipated acquisition by Centene that was completed in March

23  2016.

24     93.   Health Net had explored the market for a suitor for two years before its 2016

25  merger with Centene.  Health Net CEO Jay Gellert and Centene CEO Michael Neidorff first met

26  in November 2014, to discuss a potential merger, but did not initiate negotiations.  Health Net

27  apparently spoke with two other interested buyers in the beginning of 2015, but those negotiations

28  stalled.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 18 -

94.     In May 2015, Health Net reported its first-quarter profits had edged slightly upward.  More notable was Health Net's swelling membership, the result of the ACA and a generous policy form that provided reimbursement levels greater than its competitors.  Individual membership climbed 74% to 360,000.  Health Net's first-quarter revenue jumped 28% to $3.9 billion.  Net income increased 4% to $30 million, equaling a 0.8% profit margin.

95.     After the positive financial report, Centene returned to Health Net and negotiations began in earnest in June 2015.  On July 2, 2015, Health Net announced that it had entered into a merger agreement with Centene under which Centene would acquire all of the issued and outstanding shares of Health Net.  In October 2015, Health Net's stockholders voted to approve the adoption of the merger agreement with Centene.  When the deal was finalized, it was valued at $6.8 billion.  Health Net's CEO received a golden parachute worth $54 million and the CFO received a golden parachute of $23.4 million.

96.     In January 2016, Health Net abruptly stopped paying out-of-network BH/SUD claims.  Health Net sent a letter to numerous out-of-network BH/SUD treatment facilities in California, outlining a "number of potential concerns" about "false and/or fraudulent claims," followed by more letters in February and March to out-of-network BH/SUD facilities and to patients, requesting proof that the providers had collected the patient's deductibles, co-pays or co-insurance.

97.     By March 2016, Health Net had developed a scheme to underpay the out-of-network BH/SUD claims by implementing institutional policies and procedures that instructed its claims personnel to refer out-of-network BH/SUD claims for special handling and, if cleared for payment, to not pay out-of-network BH/SUD claims at 75% of billed charges, as required by the Policy, and to instead use the inapplicable Medicare reimbursement rate.

98.     In July 2016, Centene was forced to disclose to its shareholders that Health Net had incurred *$390 million* in liabilities for out-of-network BH/SUD claims, which existed as of the March 24, 2016 merger date, but had not been properly accounted for and disclosed.  The increased liabilities were greater than Health Net's entire pre-tax annual earnings in recent years, making clear that Health Net's earnings had been vastly overstated.  Centene was forced to record

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

1   these increased liabilities in filings with the U.S. Securities and Exchange Commission, and

2   Health Net's revenue and income were both reduced drastically, prompting Centene to request

3   premium increases and benefit design changes, including reductions in reimbursement for out-of-

4   network BH/SUD services.

5       99.     Centene and Health Net worked feverishly to control the bad publicity.  On July 26,

6   2016, for instance, during an analyst call, Centene CFO Jeffrey Schwaenke, discussing losses from

7   Health Net-related out-of-network BH/SUD claims in California said, "[w]e have taken steps to

8   mitigate the substance abuse treatment center cost in the individual commercial business in

9   California including modifications to plan design," and that Centene was "actively working" to

10  "ensure we maintain a competitive individual commercial product in 2017."

11      100.    Centene CEO Michael Neidorff added in that same analyst call that Centene was

12  "being very aggressive in fixing it."  He explained further that Centene was "working with the

13  state at the highest levels to redesign the PPO product.  There were major flaws in it, and we

14  corrected that."  Later, he reiterated that, "the behavioral issue is being dealt with with [sic] the

15  benefit designs."  Mr. Neidorff explained that the Health Net PPO plans had "product design

16  issues," but insisted, "[w]e're closing – I don't want to call it loopholes – some openings."

17      101.    On July 28, 2016, appearance on the CNBC show, "Mad Money," Mr. Neidorff

18  responded to a question regarding losses in Health Net's California business by stating, "we have

19  an issue there … that the individual PPO had a bad product design."

20      102.    Further, during another analyst call on October 23, 2016, Mr. Neidorff returned to

21  the issue of the design flaws in Health Net's PPO Policy and Centene's efforts to fix them.  He

22  detailed some of the key changes, including "the first time inclusion of an out-of-network

23  deductible for platinum and gold plans," a "significant increase in the out-of-network maximum

24  out-of-pocket level," the "elimination of non-emergent out-of-state coverage and travel network

25  access," the "elimination of the default rate of 75% of billed charges to out-of-network services

26  that do not have a Medicare rate," and "restrictions on third-party premium payments, which were

27  not included in the original 2016 offering."

28      103.    Speaking further about Health Net's PPO plan prior to 2017, Mr. Neidorff said,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 20 -

1    "when you look at ... the out-of-network coverage, the benefit design they had before without the

2    Medicare Maximum and the other issues where there was a percent of billed charges, basically

3    out-of-network providers could do what they wanted and we are liable at a time for 75% of billed

4    charges 'til they change their certificate of coverage."

5        104.    In addition, at the Morgan Stanley Global Health Care Conference on September

6    13, 2016, Mr. Neidorff stated that Centene had "dealt with" its losses and liabilities for Health Net

7    out-of-network BH/SUD claims in California by "chang[ing] the benefit level," and said it was

8    working to "fix the PPO in California." He added, "[t]here were some design flaws that were just

9    so obvious to those of us who have been doing it for a long time. Those have been fixed." Mr.

10    Neidorff went on to explain some of the "design flaws" in the Health Net PPO Policy that had led

11    to its liability for out-of-network BH/SUD claims in California:

12              There were not the incentives. A PPO is designed to give people an
               option to go out of network, but really it should be designed to
13              encourage people to stay in network. This had none of that. There
               were no caps on maximum allowances. We had the most liberal – or
14              Health Net had the most liberal PPO out there, which encouraged
               adverse selection. ... But we knew we had the prior purchase
15              accounting methodology to deal with it. And we knew what it would
               take to fix it. And that's just what we have been doing, very
16              methodically. And we're very comfortable.

17        105.    Health Net knew it had a "bad product" that provided generous levels of

18    reimbursement for out-of-network BH/SUD claims. By withholding payments to hundreds of

19    facilities for thousands of claims worth tens of millions of dollars, beginning in January 2016,

20    Health Net was able to contrive a reduction in liabilities that improved the overall equity of Health

21    Net and its value to Centene pre-merger, thereby improving Health Net's sale price to Centene.

22        106.    Furthermore, Centene states in its financial disclosure, "if the accounting for the

23    business combination is incomplete, provisional amounts are recorded ... up to one year from the

24    acquisition date." In essence, by delaying, disputing and withholding payments to substance use

25    treatment facilities, Centene was able to smooth out its profit over the four quarters post-merger.

26    Health Net's SIU investigation in effect allowed Centene to prop up its profits until the out-of-

27    network BH/SUD claims trapped in the audit are "resolved" in subsequent quarters.

28        107.    Health Net initiated an SIU audit as a pretext to allow Health Net to artificially

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -
COMPLAINT

1    depress its liabilities (the out-of-network BH/SUD claims), increase its pre-merger equity, and to

2    allow Centene to spread the unaccounted for liabilities across the post-merger quarters.

3        108.    Health Net and Centene furthered this deceptive, fraudulent, bad faith scheme by

4    substantially reducing the reimbursement for substance use treatment, in March 2016, when

5    Health Net implemented its policies and procedures with instructions to not pay out-of-network

6    BH/SUD claims at 75% of billed charges, and to instead use an inapplicable Medicare

7    reimbursement rate.

8        109.    All of this was designed to increase the value of the merger and executive bonuses

9    at the expense of insured members in need of BH/SUD services and the providers of such services.

10       110.    At the Wells Fargo Securities Healthcare Conference, on September 7, 2016,

11   Centene's Vice President of Finance, Edmund E. Kroll, admitted that Health Net had wrongfully

12   denied many of the out-of-network BH/SUD claims:

13           [Health Net] denied a lot of claims that [Centene] determined should
             be on the books [because] ... they were owed.
14

15       111.    Through its conduct of misrepresenting provider networks, failing to maintain

16   adequate provider networks, initiating a groundless dragnet SIU investigation and refusal to

17   reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-network

18   providers, and reimbursing out-of-network BH/SUD claims with an inapplicable Medicare

19   reimbursement rate in contravention of the express Policy terms, Health Net violated the

20   California Insurance Code and implementing regulations, the MHPAEA, the UCL and the CLRA.

21                                    **CLASS ALLEGATIONS**

22       112.    This action is brought on behalf of Plaintiff individually as successor in interest to

23   Chase Frei, and on behalf of the Class, pursuant to Code of Civil Procedure section 382 and Civil

24   Code section 1781.  Plaintiff seeks to represent the following Class:

25           All California residents who purchased a Health Net PPO Policy on or after October 1,

26           2013, and prior to 2017.

27       113.    Plaintiff reserves the right under Rule 3.765(b) of the California Rules of Court to

28   amend or modify the class description with greater specificity, by further division into subclasses

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    or by limitation to particular issues.

2      114.    The proposed Class is composed of thousands of persons dispersed throughout the

3    State of California and joinder is impractical. The precise number and identity of Class Members

4    are unknown to Plaintiff but can be obtained from Health Net's records.

5      115.    There are questions of law and fact common to members of the Class, which

6    predominate over questions affecting only individual Class Members.

7      116.    Plaintiff is a member of the Class and Plaintiff's claims are typical of the claims of

8    the Class.

9      117.    Plaintiff is willing and prepared to serve the Court and the proposed Class in a

10    representative capacity. Plaintiff will fairly and adequately protect the interests of the Class and

11    have no interests adverse to or which conflict with the interests of the other members of the Class.

12      118.    The self-interest of Plaintiff is co-extensive with and not antagonistic to those of

13    absent Class members. Plaintiff will undertake to represent and protect the interests of absent

14    Class members.

15      119.    Plaintiff has engaged the services of counsel indicated below who are experienced

16    in complex class litigation, will adequately prosecute this action, and will assert and protect the

17    rights of and otherwise represent Plaintiff and absent Class Members.

18      120.    The prosecution of separate actions by individual Class Members would create a

19    risk of inconsistency and varying adjudications, establishing incompatible standards of conduct for

20    Health Net.

21      121.    Health Net has acted on grounds generally applicable to the Class, thereby making

22    relief with respect to the members of the Class as a whole appropriate.

23      122.    A class action is superior to other available means for the fair and efficient

24    adjudication of this controversy. Prosecution of the complaint as a class action will provide

25    redress for individual claims too small to support the expense of complex litigation and reduce the

26    possibility of repetitious litigation.

27      123.    Plaintiff does not anticipate any unusual or difficult management problems with the

28    pursuit of this Complaint as a class action.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# FIRST CAUSE OF ACTION

## Violations of Business & Professions Code Section 17200, et seq. – the UCL

## As Against All Defendants

124.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

125.    The UCL prohibits acts of "unfair competition," which is defined by Business and Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice ...."

126.    Health Net's conduct, and the conduct of DOES 1 through 100, as described above, constitutes unlawful business acts and practices.

127.    Health Net and DOES 1 through 100 have violated and continue to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things, violating provisions of the California Insurance Code and implementing regulations, the MHPAEA, and the CLRA by the conduct alleged herein, including but not limited to:

a.      By misrepresenting the providers that would be in-network under Plaintiff and Class Members' PPO Policies, Health Net's advertisements are not "truthful" and are "misleading in fact or in implication" in violation of 10 CCR § 2536.1(b).

b.      By misrepresenting the providers that would be in-network under Plaintiff and Class Members' PPO Policies and by misrepresenting the size of the available provider networks, Health Net is failing to "provide, in easily understood language and in a uniform, clearly organized manner" information about the PPO Policies, including the "principal benefits and coverage of the disability insurance policy" and the "exceptions, reductions, and limitations that apply to such policy" in violation of Insurance Code sections 10603(a)(1) and 10604(a).

c.      By misrepresenting the providers that would be in-network under Plaintiff and Class Members' PPO Policies, Health Net's Policies are not "fair and reasonable" and "inconsistent with standards of good health care and clinically appropriate care" in violation of Insurance Code section 10133.5.

d.      By misrepresenting the providers that would be in-network under Plaintiff

- 24 -

COMPLAINT

1  and Class Members' PPO Policies, Health Net has failed to "ensure that … [n]etwork providers

2  are duly licensed or accredited and that they are sufficient, in number or size, to be capable of

3  furnishing the health care services covered by the insurance contract, taking into account the

4  number of covered persons, their characteristics and medical needs including the frequency of

5  accessing needed medical care within the prescribed geographic distances outlined herein and the

6  projected demand for services by type of services" in violation of 10 CCR § 2240.1(b)(1).

7           e.      By refusing to provide continuity of care with a patient's physician for an

8  acute condition, serious chronic condition, pregnancy, terminal illness, a newborn child, or

9  performance of surgery to consumers during their course of treatment, Health Net is failing to

10  provide covered services in violation of Insurance Code section 10133.56.

11          f.      By implementing policies and procedures applicable only to BH/SUD

12  services and required reimbursement of such services at inapplicable Medicare reimbursement

13  rates, Health Net violated the MHPAEA, and Insurance Code section 10112.27.

14          g.      By engaging in the conduct alleged herein, Health Net's conduct also

15  violates the CLRA.

16     128.    Plaintiff and Class Members have suffered injury in fact and lost money and

17  property as a result of Health Net and DOES 1 through 100's unlawful business acts and practices

18  by, among other things, receiving lesser coverage under their PPO Policies, paying unexpected

19  out-of-pocket costs and inflated premiums, and paying out-of-pocket costs and premium amounts

20  in excess of what would have been paid if Health Net and DOES 1 through 100 had accurately

21  disclosed its provider networks.

22     129.    Health Net and DOES 1 through 100's conduct does not benefit consumers or

23  competition.  Indeed the injury to consumers and competition is substantial.

24     130.    Plaintiff and Class Members could not have reasonably avoided the injury each of

25  them suffered.

26     131.    The gravity of the consequences of Health Net and DOES 1 through 100's conduct

27  as described above outweighs any justification, motive or reason therefor and is immoral,

28  unethical, oppressive, unscrupulous, and offends established public policy delineated in California

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 25 -

1  law, the Insurance Code and implementing regulations.

2      132.   Health Net and DOES 1 through 100's acts as described above constitute

3  fraudulent business practices under the UCL.

4      133.   Health Net and DOES 1 through 100's misleading and fraudulent representations,

5  advertising, marketing, and communications are likely to deceive reasonable California

6  consumers.  Plaintiff and Class Members were deceived regarding the provider networks and

7  Health Net's other misrepresentations and omissions as more fully described herein.

8      134.   Health Net and DOES 1 through 100's misrepresentations and omissions were

9  material and were a substantial factor in Plaintiff's and Class Members' decisions to enroll in and

10  renew their PPO Policies.  Such acts are fraudulent business acts and practices.

11      135.   These acts and practices resulted in and caused Plaintiff and Class Members to pay

12  more for their health plans than they would have absent Health Net and DOES 1 through 100's

13  fraud.

14      136.   Plaintiff and Class Members have been injured by Health Net and DOES 1 through

15  100's fraudulent business acts and practices by receiving lesser coverage under their PPO Policies.

16      137.   As a result of Health Net and DOES 1 through 100's violations of the UCL,

17  Plaintiff seeks an order of this Court enjoining Health Net's continued violations.  Plaintiff also

18  seeks an order for restitution of all monies paid for Health Net PPO Policies in an amount

19  reflecting the difference in the value of the PPO Policies with the providers as misrepresented at

20  any time since October 1, 2013, and the value of the PPO Policies with the actual reduced provider

21  networks.

22      138.   Plaintiff and the Class Members are entitled to recover attorney fees and costs

23  pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of

24  important rights affecting the public interest that confer a significant benefit on the general public.

25      139.   Health Net and DOES 1 through 100's conduct described herein was intended to

26  cause injury to Plaintiff and the Class Members, and was despicable conduct carried on by Health

27  Net and DOES 1 through 100 with a willful and conscious disregard of the rights of Plaintiff and

28  the Class Members, subjected Plaintiff and the Class Members to cruel and unjust hardship in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 26 -

1  conscious disregard of their rights, and was an intentional misrepresentation, deceit, or

2  concealment of material facts known to the Health Net and DOES 1 through 100 with the

3  intention to deprive Plaintiff and the Class Members property, legal rights or to otherwise cause

4  injury, such as to constitute malice, oppression or fraud under Civil Code section 3294, thereby

5  entitling Plaintiff and the Class Members to punitive damages in an amount appropriate to punish

6  or set an example of Health Net and DOES 1 through 100.

7       140.    Health Net and DOES 1 through 100's conduct described herein was undertaken by

8  their officers or managing agents, and was therefore undertaken on behalf of Health Net. Health

9  Net further had advance knowledge of the actions and conduct of said individuals whose actions

10  and conduct were ratified, authorized, and approved by managing agents whose precise identities

11  are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1

12  through 100.

13  **SECOND CAUSE OF ACTION**

14  **Violations of Business & Professions Code § 17500, et seq. –**

15  **the California False Advertising Law**

16  **As Against All Defendants**

17       141.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully

18  set forth herein.

19       142.    Health Net and DOES 1 through 100 violated California's False Advertising Law

20  (Bus. and Prof. Code § 17500, et seq.) by making false and misleading representations in

21  advertising, marketing, and communications regarding provider networks and making other

22  misrepresentations and omissions as more fully described herein.

23       143.    These representations have deceived and are likely to deceive Plaintiff and the

24  Class Members in connection with their decision to purchase their PPO Policies. Health Net and

25  DOES 1 through 100's representations also have deceived and are likely to deceive Plaintiff and

26  the Class Members with respect to the expected costs they would be spending out-of-pocket under

27  their PPO Policies. Health Net and DOES 1 through 100's representations were material and were

28  a substantial and material factor in Plaintiff's and the Class Members' decisions to purchase their

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 27 -

1    PPO Policies.  Had Plaintiff and the Class Members known the actual facts, they would not have

2    purchased the PPO Policies and paid out-of-pocket costs and premiums in excess of what they

3    would have paid if Health Net and DOES 1 through 100 had accurately disclosed provider

4    networks and the real terms,  coverage and benefits provided by the PPO Policies.

5         144.    Health Net and DOES 1 through 100 directly and indirectly, have engaged in

6    substantially similar conduct with respect to Plaintiff and to each of the Class Members.

7         145.    Health Net and DOES 1 through 100, and each of them, aided and abetted,

8    encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their

9    wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized

10   herein, to aid and abet and substantially assist the commission of these wrongful acts and other

11   wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary

12   wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of

13   the wrongful conduct, wrongful goals, and wrongdoing.

14        146.    Plaintiff and the Class Members have suffered injury by Health Net and DOES 1

15   through 100's violation of Business and Professions Code section 17500, et seq.

16        147.    As a result of Health Net and DOES 1 through 100's violations of the Business and

17   Professions Code section 17500, Plaintiff and the Class Members seek an order of this Court

18   enjoining Health Net's continued violations.  Plaintiff and the Class Members also seek an order

19   for restitution of all monies paid for Health Net PPO Policies in an amount reflecting the

20   difference in the value of the PPO Policies with the providers as misrepresented at any time since

21   October 1, 2013 and the value of the PPO Policies with the actual reduced provider networks.

22        148.    Plaintiff and the Class Members are entitled to recover attorney fees and costs

23   pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of

24   important rights affecting the public interest that confer a significant benefit on the general public.

25        149.    Health Net and DOES 1 through 100's conduct described herein was intended to

26   cause injury to Plaintiff and the Class Members, and was despicable conduct carried on by Health

27   Net and DOES 1 through 100 with a willful and conscious disregard of the rights of Plaintiff and

28   the Class Members, subjected Plaintiff and the Class Members to cruel and unjust hardship in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 28 -

1  conscious disregard of their rights, and was an intentional misrepresentation, deceit, or

2  concealment of material facts known to the Health Net and DOES 1 through 100 with the

3  intention to deprive Plaintiff and the Class Members property, legal rights or to otherwise cause

4  injury, such as to constitute malice, oppression or fraud under Civil Code section 3294, thereby

5  entitling Plaintiff and the Class Members to punitive damages in an amount appropriate to punish

6  or set an example of Health Net and DOES 1 through 100.

7       150.    Health Net and DOES 1 through 100's conduct described herein was undertaken by

8  their officers or managing agents, and was therefore undertaken on behalf of Health Net.  Health

9  Net further had advance knowledge of the actions and conduct of said individuals whose actions

10 and conduct were ratified, authorized, and approved by managing agents whose precise identities

11 are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1

12 through 100.

13                    **THIRD CAUSE OF ACTION**

14         **Violations of Civil Code § 1750, et seq. -- the CLRA**

15                    **As Against All Defendants**

16      151.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully

17 set forth herein.

18      152.    Under Civil Code section 1770, subdivision (a), of the CLRA, the following "unfair

19 methods of competition and unfair or deceptive acts or practices undertaken by any person in a

20 transaction intended to result or which results in the sale or lease of goods or services to any

21 consumer are unlawful":

22          a.    "Representing that goods or services have sponsorship, approval,

23 characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person

24 has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civ.

25 Code § 1770(a)(5).

26          b.    "Advertising goods or services with intent not to sell them as advertised."

27 Civ. Code § 1770(a)(9).

28          c.    "Representing that a transaction confers or involves rights, remedies, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  obligations which it does not have or involve, or which are prohibited by law." Civ. Code §

2  1770(a)(14).

3       d.   "Inserting an unconscionable provision in the contract. Civ. Code §

4  1770(a)(19).

5       153.   Here, in connection with Health Net engaging in the initial offering and monthly

6  transactions with consumers that were intended to result, or actually resulted in, the sale of

7  services, Health Net and DOES 1 through 100 have violated the CLRA, Civil Code section 1770,

8  subdivisions (a)(5), (a)(9), (a)(14), and (a)(19) by:

9       a.   Representing that its PPO Policies have provider network characteristics

10  and other terms and benefits which they do not have.

11       b.   Advertising its PPO Policies as having provider network characteristics and

12  other terms and benefits with the intent not to sell them as advertised.

13       c.   Representing that a transaction confers or involves provider network rights,

14  remedies, or obligations which they do not have.

15       d.   Adopting unconscionable contract provisions implementing inadequate

16  provider networks, and concealing material terms of the coverage.

17       154.   Such acts and practices were designed or intended by Health Net to convince Class

18  Members to initially purchase and renew their PPO Policies each month. The CLRA "shall be

19  liberally construed and applied to promote its underlying purposes, which are to protect consumers

20  against unfair and deceptive business practices and to provide efficient and economical procedures

21  to secure such protection." For purposes of the CLRA, a "'[t]ransaction' means an agreement

22  between a consumer and any other person, whether or not the agreement is a contract enforceable

23  by action, and includes the making of, and the performance pursuant to, that agreement." Civil

24  Code § 1761(e). Here, the "transactions" at issue governed by the CLRA include both the original

25  sale and the renewals of the its PPO Policies made and entered into by Health Net, Plaintiff and

26  the Class Members, as well as Health Net's performance of its obligations under such its PPO

27  Policies. In making decisions whether to initially purchase and renew their its PPO Policies, and

28  pay the rates imposed by Health Net, Plaintiff and the Class Members reasonably acted in positive

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 30 -

COMPLAINT

1   response to Health Net's misrepresentations as set forth in detail herein, or would have considered

2   the omitted facts detailed herein material to their decisions to do so.

3       155.   Section 1761, subdivision (b), of the CLRA defines "services" as "work, labor, and

4   services for other than a commercial or business use, including services furnished in connection

5   with the sale or repair of goods." Health Net and DOES 1 through 100's ongoing "work and

6   labor" to establish, maintain, and improve BH/SUD provider networks is the core of the PPO

7   Policies at issue here.

8       156.   Health Net and DOES 1 through 100 violated the CLRA by committing unfair and

9   deceptive acts that directly undermined Plaintiff' and the Class Members' ability to access the

10   provider networks. Health Net's unfair and deceptive acts increased patient costs when accessing

11   provider networks and unilaterally reduced treatments and services available from those provider

12   networks.

13       157.   Plaintiff and the Class Members have suffered harm as a result of these violations.

14   Plaintiff and the Class Members purchased and renewed PPO Policies, reasonably relying on

15   Health Net and DOES 1 through 100's material misrepresentations, among other things, that

16   certain providers would be in-network. Plaintiff and the Class Members have also suffered

17   transactional costs by expending time and resources in the form of correspondence and telephone

18   conversations in an attempt to avoid the consequences of Health Net's unfair methods of

19   competition and unfair or deceptive acts. Plaintiff and the Class Members have also suffered

20   opportunity costs by foregoing the opportunity to switch to other coverage offered by other

21   companies during the open enrollment periods.

22       158.   Health Net and DOES 1 through 100's misrepresentations and omissions described

23   herein were intentional, or alternatively, made without the use of reasonable procedures adopted to

24   avoid such an error.

25       159.   Health Net and DOES 1 through 100, directly or indirectly, have engaged in

26   substantially similar conduct to Plaintiff and to each of the Class Members.

27       160.   Such wrongful actions and conduct are ongoing and continuing. Unless Health Net

28   and DOES 1 through 100 are enjoined from continuing to engage in such wrongful actions and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 31 -

1    conduct, the public will continue to be harmed by Health Net and DOES 1 through 100's conduct.

2       161.    Health Net and DOES 1 through 100, and each of them, aided and abetted,

3    encouraged, and rendered substantial assistance in accomplishing the wrongful conduct and their

4    wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized

5    herein, to aid and abet and substantially assist the commission of these wrongful acts and other

6    wrongdoings complained of, Health Net and DOES 1 through 100 each acted with an awareness

7    of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist

8    the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

9       162.    Plaintiff and the Class are entitled to an injunction, pursuant to Civil Code section

10    1780, prohibiting Health Net from continuing to engage in the above-described violations of the

11    CLRA.

12       163.    Plaintiff and the Class Members are entitled to recover attorney fees and costs

13    pursuant to Civil Code section 1780(d).

14       164.    Plaintiff and the Class Members are entitled to recover attorney fees and costs

15    pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of

16    important rights affecting the public interest that confer a significant benefit on the general public.

17       165.    Health Net and DOES 1 through 100's conduct described herein was intended to

18    cause injury to Plaintiff and the Class Members, and was despicable conduct carried on by Health

19    Net and DOES 1 through 100 with a willful and conscious disregard of the rights of Plaintiff and

20    the Class Members, subjected Plaintiff and the Class Members to cruel and unjust hardship in

21    conscious disregard of their rights, and was an intentional misrepresentation, deceit, or

22    concealment of material facts known to the Health Net and DOES 1 through 100 with the

23    intention to deprive Plaintiff and the Class Members property, legal rights or to otherwise cause

24    injury, such as to constitute malice, oppression or fraud under Civil Code section 3294, thereby

25    entitling Plaintiff and the Class Members to punitive damages in an amount appropriate to punish

26    or set an example of Health Net and DOES 1 through 100.

27       166.    Health Net and DOES 1 through 100's conduct described herein was undertaken by

28    their officers or managing agents, and was therefore undertaken on behalf of Health Net.  Health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Net further had advance knowledge of the actions and conduct of said individuals whose actions

2   and conduct were ratified, authorized, and approved by managing agents whose precise identities

3   are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1

4   through 100.

5                           **FOURTH CAUSE OF ACTION**

6                                **Breach of Contract**

7                              **As Against All Defendants**

8          167.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully

9   set forth herein.

10         168.   Health Net and DOES 1 through 100 owe duties and obligations to Plaintiff and the

11  Class Members under the PPO Policies at issue.

12         169.   By misrepresenting provider networks, denying coverage or paying less for medical

13  services on the basis that services were provided by an out-of-network provider, Health Net and

14  DOES 1 through 100 have uniformly breached the terms and provisions of the PPO Policies

15  entered into with Plaintiff and the Class Members.

16         170.   As a direct and proximate result of Health Net and DOES 1 through 100's conduct

17  and breach of contractual obligations, Plaintiff and the Class Members suffered damages under the

18  PPO Policies in an amount to be determined according to proof at the time of trial.

19                          **FIFTH CAUSE OF ACTION**

20           **Breach of the Implied Covenant of Good Faith and Fair Dealing**

21                             **As Against All Defendants**

22         171.   Plaintiff incorporates by reference each of the preceding paragraphs as though fully

23  set forth herein.

24         172.   Through its conduct of misrepresenting provider networks, failing to maintain

25  adequate provider networks, initiating a groundless dragnet SIU investigation and refusal to

26  reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-network

27  providers, and reimbursing out-of-network BH/SUD claims with an inapplicable Medicare

28  reimbursement rate in contravention of the express Policy terms, Health Net and DOES 1 through

1   100 have breached their duty of good faith and fair dealing owed to Plaintiff and the Class

2   Members.

3       173.    Plaintiff allege that Health Net and DOES 1 through 100 have breached their duty

4   of good faith and fair dealing owed to Plaintiff and the Class Members by other acts or omissions

5   of which Plaintiff is presently unaware and which will be shown according to proof at trial.

6       174.    As a proximate result of the aforementioned unreasonable and bad faith conduct of

7   Health Net and DOES 1 through 100, Plaintiff and the Class Members have suffered, and will

8   continue to suffer in the future, damages under the PPO Policies, plus interest, and other

9   economic, non-economic and consequential damages, in an amount to be proven at trial.

10      175.    As a further proximate result of the unreasonable and bad faith conduct of Health

11  Net and DOES 1 through 100, Plaintiff and the Class Members were compelled to retain legal

12  counsel and to institute litigation to obtain the benefits due under the contracts.  Therefore,

13  Defendants are liable for those attorney fees, witness fees and litigation costs reasonably incurred

14  in order for Plaintiff to obtain the benefits owed under the PPO Policies.

15      176.    Health Net and DOES 1 through 100's conduct described herein was intended to

16  cause injury to Plaintiff and the Class Members, and was despicable conduct carried on by Health

17  Net and DOES 1 through 100 with a willful and conscious disregard of the rights of Plaintiff and

18  the Class Members, subjected Plaintiff and the Class Members to cruel and unjust hardship in

19  conscious disregard of their rights, and was an intentional misrepresentation, deceit, or

20  concealment of material facts known to the Health Net and DOES 1 through 100 with the

21  intention to deprive Plaintiff and the Class Members property, legal rights or to otherwise cause

22  injury, such as to constitute malice, oppression or fraud under Civil Code section 3294, thereby

23  entitling Plaintiff and the Class Members to punitive damages in an amount appropriate to punish

24  or set an example of Health Net and DOES 1 through 100.

25      177.    Health Net and DOES 1 through 100's conduct described herein was undertaken by

26  their officers or managing agents, and was therefore undertaken on behalf of Health Net.  Health

27  Net further had advance knowledge of the actions and conduct of said individuals whose actions

28  and conduct were ratified, authorized, and approved by managing agents whose precise identities

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

1   are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1

2   through 100.

3                          **SIXTH CAUSE OF ACTION**

4                              **Declaratory Relief**

5                          **As Against All Defendants**

6       178.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully

7   set forth herein.

8       179.    An actual controversy has arisen between Plaintiff and the Class Members on the

9   one hand, and Health Net and DOES 1 through 100 on the other hand, as to their respective rights

10  and obligations under the PPO Policies.  Specifically, Plaintiff and the Class Members contend

11  that Health Net and DOES 1 through 100's conduct of misrepresenting provider networks, failing

12  to maintain adequate provider networks, initiating a groundless dragnet SIU investigation and

13  refusal to reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-

14  network providers, and reimbursing out-of-network BH/SUD claims with an inapplicable

15  Medicare reimbursement rate in contravention of the express Policy terms, is prohibited by

16  California law, whereas Health Net and DOES 1 through 100 contend that their conduct was

17  proper.

18      180.    Plaintiff seeks a declaration as to the respective rights and obligations of the

19  parties.

20                          **PRAYER FOR RELIEF**

21      Plaintiff individually as successor in interest to Chase Frei, and on behalf of the Class,

22  prays for relief as follows:

23      1.    An Order certifying the proposed Class pursuant to Code of Civil Procedure section

24  382 and Civil Code section 1780 et seq. and appointing Plaintiff to represent the proposed Class

25  and designating their counsel as Class Counsel;

26      2.    An Order enjoining Health Net from continuing to engage in the conduct described

27  herein;

28      3.    An Order awarding Plaintiff and the Class restitution and such other relief as the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 35 -

1   Court deems proper;

2       4.      An Order awarding Plaintiff and the Class damages for misrepresenting provider

3   networks and failure to provide coverage under the contracts, plus interest, including prejudgment

4   interest, and other economic and consequential damages, in a sum to be determined at the time of

5   trial;

6       5.      An Order awarding Plaintiff and the Class punitive and exemplary damages in an

7   amount appropriate to punish or set an example of Defendants;

8       6.      An Order declaring the rights and obligations of Plaintiff and the Class Members,

9   on the one hand, and Health Net, on the other, with regard to the business practices alleged;

10      7.      An Order awarding Plaintiff's attorney fees, costs and expenses as authorized by

11  applicable law; and

12      8.      For such other and further relief as this Court may deem just and proper.

13                                  **JURY DEMAND**

14      Plaintiff demands a trial by jury.

15

16  Dated: May 22, 2018                    **CALLAHAN & BLAINE, APLC**

17                                  By:

18                                      Daniel J. Callahan, Esq.
                                        Edward Susolik, Esq.
19                                      Richard T. Collins, Esq.
                                        Damon D. Eisenbrey, Esq.
20                                      Attorneys for Plaintiff PATRICIA MITCHELL,
                                        individually as successor in interest to Chase
21                                      Frei,
                                        and on behalf of all others similarly situated
22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 36 -

# EXHIBIT A

1  CALLAHAN & BLAINE, APLC
   Daniel J. Callahan (Bar No. 91490)
2  Edward Susolik (Bar No. 151081)
   Richard T. Collins (Bar No. 166577)
3  Damon D. Eisenbrey (Bar No. 215927)
   3 Hutton Centre Drive, Ninth Floor
4  Santa Ana, California 92707
   Telephone: (714) 241-4444
5  Facsimile: (714) 241-4445

6  Attorneys for Plaintiff PATRICIA MITCHELL,
   individually as successor in interest to Chase Frei,
7  and on behalf of all others similarly situated

8              SUPERIOR COURT OF CALIFORNIA

9               COUNTY OF LOS ANGELES

10

11  PATRICIA MITCHELL, individually as          CASE NO.
    successor in interest to Chase Frei,
12  and on behalf of all others similarly situated,

13               Plaintiff,                       DECLARATION OF PATRICIA
                                                  MITCHELL RE:  SUCCESSOR IN
14        v.                                      INTEREST TO CHASE FREI

15  HEALTH NET, INC., a Delaware
    corporation;
16  HEALTH NET LIFE INSURANCE
    COMPANY, a California corporation;
17  HEALTH NET OF CALIFORNIA, INC., a
    California corporation;
18  MANAGED HEALTH NETWORK, INC., a             Complaint Filed:
    Delaware corporation;                       Trial Date:
19  CENTENE CORPORATION, a Delaware
    corporation; and DOES 1 through 100,
20  inclusive,

21               Defendants.

22

23

24

25

26

27

28

DECLARATION OF PATRICIA MITCHELL RE:  SUCCESSOR IN INTEREST TO CHASE FREI

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

I, Patricia Mitchell, declare:

1.   I am the mother of Chase Frei ("Decedent").

2.   Decedent died on May 6, 2017, Orange County, California. A certified copy of Decedent's death certificate is attached hereto.

3.   No proceeding is now pending in California for the administration of Decedent's estate.

4.   I am Decedent's successor in interest as defined by Code of Civil Procedure section 377.11, and as provided by Insurance Code section 10130 and Probate Code section 6402, and succeeds to Decedent's interests in this action.

5.   No other person has a superior right to commence this action or to be substituted for Decedent in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 17th day of May, 2018, at _Livermore_ California.

_Patricia Mitchell_

Patricia Mitchell

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
### HEALTH CARE AGENCY
1200 N. MAIN STREET, SUITE 100-A
SANTA ANA, CALIFORNIA 92701

3052017095979    CERTIFICATE OF DEATH    3201730007667

| 1. NAME OF DECEDENT-FIRST | 2. MIDDLE | 3. LAST |
|---|---|---|
| CHASE | TRISTEN JOSEPH | FREI |

| 6. DATE OF BIRTH | 7. AGE | 8. SEX |
|---|---|---|
| 06/01/1994 | 22 | M |

CA   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   NEVER MARRIED   05/08/2017   0800 EST

HS GRADUATE   WHITE

COUNSELOR   RECOVERY   1 of 2   1

2007 CALLE ALEGRIA

| CITY | COUNTY | ZIP | YEARS IN COUNTY | STATE |
|---|---|---|---|---|
| FULLERTON | ORANGE | 92833 | 2 | CA |

PATRICIA MITCHELL, MOTHER   6360 STARFLOWER WAY, LIVERMORE, CA 94551

| NAME OF SURVIVING SPOUSE/SDP-FIRST | MIDDLE | LAST BIRTH NAME |
|---|---|---|

| NAME OF FATHER/PARENT-FIRST | MIDDLE | LAST | BIRTH STATE |
|---|---|---|---|
| ERNEST | JOSEPH | FREI | CA |

| NAME OF MOTHER/PARENT-FIRST | MIDDLE | LAST BIRTH NAME | BIRTH STATE |
|---|---|---|---|
| PATRICIA | JEAN | MANGANO | CA |

| DISPOSITION DATE | PLACE OF FINAL DISPOSITION | RES MOTHER PATRICIA MITCHELL |
|---|---|---|
| 05/12/2017 | 5360 STARFLOWER WAY, LIVERMORE, CA 94551 | |

CR/RES   NOT EMBALMED

MCAULAY & WALLACE MORTUARY   FD190   ERIC G. HANDLER, M.D.   05/10/2017

DECEDENT'S RESIDENCE

ORANGE   2007 CALLE ALEGRIA   FULLERTON

PENDING INVESTIGATION   17-02181-CO

17. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107

VICTORIA REICHARDT   05/09/2017   VICTORIA REICHARDT, DEP COR



CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF ORANGE

This is a true and exact reproduction of the document officially registered
and placed on file in the office of the Vital Records Section, Orange
County Health Care Agency.

DATE ISSUED          September 7, 2017


ERIC G. HANDLER, MD
COUNTY HEALTH OFFICER

004015851

The copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
## HEALTH CARE AGENCY
1200 N. MAIN STREET, SUITE 100-A
SANTA ANA, CALIFORNIA 92701

**PHYSICIAN/CORONER'S AMENDMENT**
NO ERASURES, WHITEOUTS, PHOTOCOPIES
OR ALTERATIONS

3052017095079 — STATE FILE NUMBER

3201730007667 — LOCAL REGISTRATION NUMBER

1.1. ☐ BIRTH  ☒ DEATH  ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY • THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

## PART I   INFORMATION TO LOCATE RECORD

| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST | 2. SEX |
|---|---|---|---|---|
| | CHASE | TRISTEN JOSEPH | FREI | M |
| | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT | |
| | 05/06/2017 | FULLERTON | ORANGE | |

## PART II   STATEMENT OF CORRECTIONS

| | 6. CERTIFICATE ITEM / LINE NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 107A | PENDING INVESTIGATION | ACUTE POLYDRUG INTOXICATION |
| | 107AT | 2 of 2 | UNK |
| | 107B | | COMBINED EFFECTS OF HEROIN, SERTRALINE, NORSERTRALINE AND LAMOTRIGINE |
| | 107BT | | UNK |
| | 112 | | SEVERE CARDIOMEGALY WITH DILATATION. CLINICAL HISTORY OF BIPOLAR DEPRESSIVE DISORDER AND SUBSTANCE ABUSE |
| | 113 | | NO |
| | 119 | PENDING INVESTIGATION | ACCIDENT |
| | 120 | | NO |
| | 121 | | 05/06/2017 |
| | 122 | | UNK |
| | 123 | | RESIDENCE |
| | 124 | | INJECTION/INGESTION/ INHALATION OF HEROIN, SERTRALINE, AND LAMOTRIGINE |
| | 125 | | DECEDENT'S RESIDENCE, 2007 CALLE ALEGRIA, FULLERTON, CA 92833 |

I HEREBY DECLARE, UNDER PENALTY OF PERJURY, THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER | 10. DATE SIGNED—MM/DD/CCYY | 11. TYPED OR PRINTED NAME AND TITLE OR OFFICE OF CERTIFIER |
|---|---|---|---|
| | LARRY J ESSLINGER | 09/06/2017 | DEPUTY CORONER |
| | 12. ADDRESS—STREET AND NUMBER | 13. CITY | 14. STATE | 15. ZIP CODE |
| | 1071 W. SANTA ANA BLVD | SANTA ANA | CA | 92703 |

| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY |
|---|---|---|
| | STATE REGISTRAR - OFFICE OF VITAL RECORDS | 09/06/2017 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS    FORM VS 24AA (REV. 1/08)    1.1.

CAOR(GED)

---

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF ORANGE

This is a true and exact reproduction of the document officially registered
and placed on file in the office of the Vital Records Section, Orange
County Health Care Agency.

DATE ISSUED    September 7, 2017

004015852





ERIC G. HAMBLER, MD
COUNTY HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

5/23   9:38

COPY

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** HEALTH NET, INC., a Delaware
*(AVISO AL DEMANDADO):* corporation; HEALTH NET Life Insurance
COMPANY, a California corporation; HEALTH NET OF
CALIFORNIA, INC., a California corporation; MANAGED
HEALTH NETWORK, INC., a Delaware corporation; CENTENE
CORPORATION, a Delaware corporation; and DOES 1
through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** PATRICIA MITCHELL,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individually as
successor in interest to Chase Frei, and on behalf of
all others similarly situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 22 2018

Sherri R. Carter, Executive Officer/Clerk of Court

By: Brittny Smith, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
LOS ANGELES SUPERIOR COURT
111 N. Hill Street
Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*
**BC 706917**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Richard T. Collins (SBN 166577)          714/241-4444     714/241-4445
CALLAHAN & BLAINE, APLC
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707

DATE: **MAY 2 2 2018** SHERRI R. CARTER    Clerk, by _Brittny Smith_ , Deputy
*(Fecha)*                                 *(Secretario)*              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Health Net of California, Inc., a California Corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

## COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | CONFORMED COPY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Richard T. Collins (SBN 166577)
CALLAHAN & BLAINE, APLC
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
TELEPHONE NO.: 714-241-4444          FAX NO.: 714-241-4445
ATTORNEY FOR (Name): Plaintiff PATRICIA MITCHELL, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: Same as Above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 22 2018

Sherri R. Carter, Executive Officer/Clerk of Court

By: Brittny Smith, Deputy

**CASE NAME:**
PATRICIA MITCHELL, et al. v. HEALTH NET, INC., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 706917 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[✓] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): Six
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 22, 2018
Richard T. Collins
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
     Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
     case involves an uninsured
     motorist claim subject to
     arbitration, check this item
     instead of Auto)*
**Other PI/PD/WD (Personal Injury/
  Property Damage/Wrongful Death)
  Tort**
  Asbestos (04)
     Asbestos Property Damage
     Asbestos Personal Injury/
        Wrongful Death
  Product Liability *(not asbestos or
     toxic/environmental)* (24)
  Medical Malpractice (45)
     Medical Malpractice–
        Physicians & Surgeons
     Other Professional Health Care
        Malpractice
  Other PI/PD/WD (23)
     Premises Liability (e.g., slip
        and fall)
     Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
     Intentional Infliction of
        Emotional Distress
     Negligent Infliction of
        Emotional Distress
     Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
     Practice (07)
  Civil Rights (e.g., discrimination,
     false arrest) *(not civil
     harassment)* (08)
  Defamation (e.g., slander, libel)
     (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
     Legal Malpractice
     Other Professional Malpractice
        *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
     Breach of Rental/Lease
        Contract *(not unlawful detainer
           or wrongful eviction)*
     Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
     Negligent Breach of Contract/
        Warranty
     Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
     book accounts) (09)
     Collection Case–Seller Plaintiff
     Other Promissory Note/Collections
        Case
  Insurance Coverage *(not provisionally
     complex)* (18)
     Auto Subrogation
     Other Coverage
  Other Contract (37)
     Contractual Fraud
     Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
     Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
     Writ of Possession of Real Property
     Mortgage Foreclosure
     Quiet Title
     Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
     drugs, check this item; otherwise,
     report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
     Writ–Administrative Mandamus
     Writ–Mandamus on Limited Court
        Case Matter
     Writ–Other Limited Court Case
        Review
  Other Judicial Review (39)
     Review of Health Officer Order
     Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
  Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
     *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
     Abstract of Judgment (Out of
        County)
     Confession of Judgment *(non-
        domestic relations)*
     Sister State Judgment
     Administrative Agency Award
        *(not unpaid taxes)*
     Petition/Certification of Entry of
        Judgment on Unpaid Taxes
     Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
     above)* (42)
     Declaratory Relief Only
     Injunctive Relief Only *(non-
        harassment)*
     Mechanics Lien
     Other Commercial Complaint
        Case *(non-tort/non-complex)*
     Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
     Governance (21)
  Other Petition *(not specified
     above)* (43)
     Civil Harassment
     Workplace Violence
     Elder/Dependent Adult
        Abuse
     Election Contest
     Petition for Name Change
     Petition for Relief From Late
        Claim
     Other Civil Petition

**CIVIL CASE COVER SHEET**

COPY

| SHORT TITLE: PATRICIA MITCHELL, et al v. HEALTH NET, INC., et al. | CASE NUMBER BC 7 0 8 9 1 7 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: PATRICIA MITCHELL, et al v. HEALTH NET, INC., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: PATRICIA MITCHELL, et al v. HEALTH NET, INC., et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☑ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: PATRICIA MITCHELL, et al v. HEALTH NET, INC., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☒ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐  9. ☐ 10. ☐ 11. | |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Los Angeles District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: May 22, 2018

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL – CLASS ACTION
### 312 N. SPRING STREET COURTHOUSE

Case Number _____ **BC 7 0 6 9 1 7** _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 6 | 211 | | | | |
| Hon. William F. Highberger | 10 | 10 | | | | |
| Hon. John Shepard Wiley, Jr. | 9 | 9 | | | | |
| Hon. Kenneth Freeman | 14 | 14 | | | | |
| Hon. Ann Jones | 11 | 11 | | | | |
| Hon. Maren E. Nelson | 17 | 17 | | | | |
| Hon. Carolyn B. Kuhl | 12 | 12 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Hon. Brian S. Currey | 15 | 15 |
| | | | | *Provisional complex (non-class action) case assignment pending complex determination | 12 | Supervising Judge 12 |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____ MAY 2 2 2018 _____
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____ , Deputy Clerk

LACIV 190 (Rev 12/17)     **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California**
**County of Los Angeles**



**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**



**Consumer Attorneys**
**Association of Los Angeles**



**Southern California**
**Defense Counsel**



**Association of**
**Business Trial Lawyers**



**California Employment**
**Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association**
**Labor and Employment Law Section** ◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE. | CASE NUMBER. |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR PLAINTIFF)
Date

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)
Date:

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)
Date:

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)
Date:

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____)
Date:

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____)
Date:

_____   ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.·
E-MAIL ADDRESS (Optional)          FAX NO. (Optional)   ·
ATTORNEY FOR (Name)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO :
E-MAIL ADDRESS (Optional):          FAX NO  (Optional)
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT.

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER. |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request)

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| COURTHOUSE ADDRESS: |
| PLAINTIFF: |
| DEFENDANT |

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

## The following parties stipulate:

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

> _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____        _____
                                        JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR - ADR may not be suitable for every dispute.**
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

LASC - FILINGS
111 N. HILL STREET
LOS ANGELES CA 90012

DATE PAID: 05/22/18  04:00 PM
RECEIPT #: CCH612315027

CIT/CASE:  BC706917
LEA/DEF#:

PAYMENT:    $1,435.00              310
RECEIVED:
    CHECK:                    $1,435.00
    CASH:                        $0.00
    CHANGE:                      $0.00
    CARD:                        $0.00